UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

March 29, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Lillie B. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-1728-BAH

Dear Counsel:

On July 14, 2022, Plaintiff Lillie B. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case, ECF 7, and the parties' dispositive filings, ECFs 11 and 12.[1] I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will GRANT Defendant's motion and AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff protectively filed a Title II application for Disability Insurance Benefits ("DIB") on April 30, 2013, alleging a disability onset of June 1, 2006. Tr. 15, 132–35. Plaintiff's claim was denied initially and on reconsideration. Tr. 67–70, 74–77. On August 4, 2015, an Administrative Law Judge ("ALJ") held a hearing. Tr. 26–44. At the hearing, Plaintiff amended her alleged onset date to December 31, 2011. Tr. 15, 687. Following the hearing, on September 2, 2015, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 15–21. After exhausting administrative remedies, Plaintiff sought judicial review in the United States District Court for the District of Columbia. Tr. 536–67. On December 5, 2019, the District Court for the District of Columbia

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, parties now file dispositive "briefs" rather than "motions for summary judgment." Plaintiff here filed a brief. ECF 11. Though Defendant's filing is docketed as a brief, it is written as a motion for summary judgment. ECF 12. As such, I will refer to Defendant's filing as a motion for summary judgment.

[2] 42 U.S.C. §§ 301 et seq.

*Lillie B. v. Kijakazi*
Civil No. 22-1728-BAH
March 29, 2023
Page 2

remanded the case back to the SSA for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). Tr. 566–67 (*Lillie B. v. Saul, Comm'r Soc. Sec.*, Civ. No. 16-2196 (TJK/DAR) (D.D.C. Dec. 5, 2019)). The Appeals Council ("AC") vacated the ALJ's prior decision and remanded the case back to an ALJ "for further proceedings consistent with the order of the court." Tr. 571. A different ALJ then held a new hearing on January 14, 2021. Tr. 477–515. Thereafter, the ALJ issued a new decision on February 2, 2021, again finding Plaintiff not disabled. Tr. 458–71. The AC denied review, Tr. 442–49, so the ALJ's 2021 decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

II.   **THE ALJ'S DECISION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her amended alleged onset date of December 31, 2011 through her date last insured of December 31, 2011." Tr. 460. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "[d]egenerative joint disease in her cervical spine, osteoarthritis, essential hypertension, diabetes mellitus, and asthma." Tr. 461. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "thyroid disorder," "status – post thyroidectomy," and "hyperlipidemia." *Id.* At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; can never climb ropes, ladders, and scaffolds; and must avoid concentrated exposure to fumes, odors, dusts, and gasses as well as hazards such as dangerous machinery and unprotected heights.

Tr. 463. After considering testimony from a vocational expert ("VE"), the ALJ determined that, on the date last insured, Plaintiff was able to perform past relevant work as a receptionist (DOT[3]

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has

#237.367-038) and a parking enforcement officer (DOT #375.587-010). Tr. 468. The ALJ also made alternative findings. With the RFC above, the ALJ determined that Plaintiff could also have performed jobs that existed in significant numbers in the national economy, including cashier (DOT #211.462-010), bench assembler (DOT #706.684-22), and sales attendant (DOT #299.677-010), on the date last insured. Tr. 470. The ALJ also found that if Plaintiff had a more restrictive RFC—specifically, one limiting Plaintiff to "sedentary work, requiring the claimant to be able to alternate between the sitting and standing position an average of every thirty minutes; requiring the claimant to be able to use a cane for ambulation; additional manipulative limitations; and more restrictive postural limitations"—she would still have been able to perform jobs that existed in significant numbers in the national economy. *Id.* Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 471.

### III. LEGAL STANDARD

As noted, the scope of this Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *see also Britt v. Saul*, 860 F. App'x 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)) ("A disability determination must be affirmed so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence."). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("[Substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g., Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

---

explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

IV. **ANALYSIS**

Plaintiff raises two main arguments on appeal, specifically that the ALJ erroneously: (1) evaluated Plaintiff's subjective complaints and (2) assessed Plaintiff's RFC. ECF 11, at 4–17. Specifically, Plaintiff argues that the ALJ improperly increased Plaintiff's burden of proof regarding the severity, persistence, and limiting effects of her symptoms in violation of *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020), and improperly failed to consider the extent to which Plaintiff could perform activities of daily living. *Id.* at 4–12. Furthermore, Plaintiff contends that the ALJ failed to perform the required function-by-function analysis when formulating Plaintiff's RFC and failed to adequately incorporate limitations into the RFC that aligned with the medical opinion of Dr. Miknowski, which the ALJ had afforded significant weight. *Id.* at 12–17. Defendant counters that the ALJ properly evaluated Plaintiff's subjective complaints and activities of daily living and properly assessed Plaintiff's RFC. ECF 12-1, at 6–15. The Court addresses each of these arguments in turn.

A. The ALJ Properly Evaluated Plaintiff's Subjective Complaints.

The Court first considers Plaintiff's contention that the ALJ applied an improper standard in evaluating Plaintiff's subjective complaints by "improperly increasing her burden of proof" and by "erroneously rel[ying] upon the Plaintiff's daily activities." ECF 11, at 6–7. An ALJ properly analyzes a claimant's subjective complaints by using a two-part test. *See Craig*, 76 F.3d at 594–95 (discussing the two-part framework used in the Fourth Circuit). First, the ALJ must assess the objective medical evidence and determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged. 20 C.F.R. § 404.1529(b). If the first step is met, the ALJ then determines how the extent and severity of those symptoms affect the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c).

The Fourth Circuit has "consistently held that 'while there must be objective medical evidence of some condition that could reasonably produce the pain," at the second step, "there need not be objective evidence of the pain itself or its intensity.'" *Arakas*, 983 F.3d at 95 (quoting *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989)). In *Arakas*, the Fourth Circuit held that that, "at the second step, the ALJ improperly discredited [the claimant]'s statements about the severity, persistence, and limited effects of her symptoms because [the ALJ] did not find them to be 'completely consistent with the objective evidence.'" *Id.* at 96 (internal citations omitted). Under *Arakas*, claimants are "entitled to rely exclusively on subjective evidence" to prove the severity and extent of their symptoms. *Id.* (quoting *Hines v. Barnhart*, 453 F.3d 559, 563, 565 (4th Cir. 2006)). An ALJ may not "'improperly increase[ the claimant's] burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id.* (quoting *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017)). At the same time, however, "a claimant's allegations about her pain" "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can be reasonably be expected to cause the pain the claimant alleges she suffers." *Craig*, 76 F.3d at 595.

Here, contrary to Plaintiff's assertion and to the facts in *Arakas*, the ALJ did not

impermissibly raise Plaintiff's burden by requiring her to provide objective evidence of the extent of her symptoms. The ALJ properly determined that Plaintiff suffered from the severe medically determinable impairments of degenerative joint disease in her cervical spine, osteoarthritis, essential hypertension, diabetes mellitus, and asthma. Tr. 461. At the first step of the symptoms analysis, the ALJ properly determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 464. That is not in dispute. The ALJ went on to evaluate Plaintiff's symptoms and the extent to which they limited her capacity to work, and concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 464–67.

This conclusion was not based on a lack of objective evidence. Rather, the ALJ weighed Plaintiff's subjective complaints against the objective medical evidence of Plaintiff's pain-causing impairments as well as other evidence in the record, including medical opinions in the record and Plaintiff's own statements, which remains permissible under *Arakas*. *See, e.g.*, Tr. 465 ("[T]he diagnostic imaging in the record shows that the claimant's musculoskeletal and neurological impairments are not as severe as her allegations would suggest."), 466 ("[T]he medical evidence regarding the claimant's musculoskeletal and neurological impairments, when considered as a whole, shows that she could perform work at a light exertional level; could occasionally perform most postural activities with the exception of never being able to climb ropes, ladders, and scaffolds; and could tolerate less – than – concentrated exposure to workplace hazards."), *id.* ("[T]he medical evidence regarding the claimant's respiratory and cardiovascular impairments, when considered as a whole, shows that she could perform light exertional work and tolerate less – than – concentrated exposure to respiratory irritants."), 468 ("[T]he claimant's course of treatment indicate [sic] that the claimant's symptoms respond positively to relatively conservative treatments such as medications."). This analysis comported with both the applicable regulatory framework detailed in 20 C.F.R. § 404.1529 and the requirements of *Arakas*.

Plaintiff argues that the ALJ failed to explain how her reported activities of daily living support finding her not disabled and that the ALJ failed to consider the extent to which she could perform these daily activities. ECF 11, at 7–8. The ALJ summarized Plaintiff's activities of daily living, as reported in her function report and hearing testimony. Tr. 466–67. The ALJ then explained how Plaintiff's activities of daily living supported the ALJ's findings regarding her specific exertional abilities. *Id.* For example, the ALJ explained that Plaintiff's reported ability to "prepare her own meals, including 'full course meals,' on a daily basis" supported the conclusion that Plaintiff could "stand for a fair amount," "reach and grasp objects with her upper extremities," and "lift and carry light objects such as pots and pans." Tr. 466–67 (quoting Tr. 176). Based on these findings, the ALJ concluded that "the claimant's daily activities, when considered as a whole, do not support her allegations in this area." Tr. 467. In sum, the ALJ properly balanced Plaintiff's subjective complaints of pain with the objective medical evidence and Plaintiff's activities of daily living while formulating Plaintiff's RFC. Thus, the ALJ did not run afoul of *Arakas* or 20 C.F.R. § 404.1529.

B.  <u>The ALJ Properly Formulated Plaintiff's RFC.</u>

Plaintiff next argues that the ALJ failed properly formulate Plaintiff's RFC in several respects.  ECF 11, at 12–17.  "'[A] proper RFC analysis' proceeds in the following order: '(1) evidence, (2) logical explanation, and (3) conclusion.'"  *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 388 (4th Cir. 2021) (quoting *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019)).  "An RFC analysis must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  *Mascio*, 780 F.3d at 636.

First, Plaintiff argues that the ALJ "failed to perform a function-by-function assessment of the Plaintiff's work-related abilities, and instead simply concluded that the Plaintiff was capable of performing 'light work.'"  ECF 11, at 14.  This is untrue.  The ALJ explained how the evidence in the record supported specific findings regarding Plaintiff's abilities.  *See, e.g.*, Tr. 465 ("For example, physical examinations have shown that the claimant has a normal gait and normal cerebellar functioning, and there does not appear to be any indication from the period under consideration that she had a significant gait impairment . . . . This suggests that the claimant could stand and walk for 6 hours in an 8 – hour workday." (citations omitted)), *id.* ("[T]he claimant has demonstrated normal motor functioning and full, 5 / 5 muscle strength in both of her upper and lower extremities during physical examinations . . . . Physical examinations have also shown that the claimant has a normal grip strength in both of her hands on at least one occasion during the period under consideration . . . . These findings, taken together, would support finding that the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently." (citations omitted)).  The ALJ here performed the required function-by-function analysis.  Even if they had not, the Fourth Circuit has rejected a *per se* rule requiring remand for failure to perform such an analysis.  *Mascio*, 780 F.3d at 636 (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Remand is only required "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id*. (quoting *Cichocki*, 729 F.3d at 177).  These criteria are present here, so remand is not warranted.

Finally, Plaintiff argues that the ALJ erred in affording Dr. Miknowski's medical opinion significant weight but nevertheless "fail[ing] to include any limitation in his residual functional capacity assessment which addressed the Plaintiff's mild to moderate limitation in walking or her moderately limited abilities to lift or carry." ECF 11, at 17.  Dr. Miknowski opined, in relevant part, that Plaintiff's ability to sit was "not restricted," her ability to stand was "mildly restricted," her ability to walk was "mildly-to-moderately restricted," and her ability to lift and carry was "moderately restricted."  Tr.  366.  Plaintiff is correct that the ALJ afforded "significant weight" to this portion of Dr. Miknowski's opinion.  Tr. 467.  The RFC, however, does include limitations related to these abilities.  For example, the ALJ limited Plaintiff to "light work," Tr. 463, which necessarily "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).  The ALJ specifically found that Dr. Miknowski's medical opinion and other evidence in the record, "taken together, would support finding that the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently."

Tr. 465. The ALJ also found that the evidence in the record, including Dr. Miknowski's opinion, "suggests that the claimant could stand and walk for 6 hours in an 8 – hour workday." *Id.*

Even if the ALJ erred by not including further limitations in Plaintiff's RFC, Plaintiff has failed to demonstrate how the outcome would be different on remand. Thus, any error would be harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency determination."); *Smith v. Colvin*, No. TMD 15-1694, 2016 WL 5147195, at *10 (D. Md. 20, 2016) (citing *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012)) (finding harmless error where the claimant failed to demonstrate how the result would have changed had the ALJ properly addressed the claimant's cognitive difficulties in the RFC analysis). The ALJ here found that even if Plaintiff were limited to an even more restrictive RFC, Plaintiff would not be disabled. Tr. 470. Specifically, the ALJ's alternative RFC included "limiting the claimant to sedentary work, requiring the claimant to be able to alternate between the sitting and standing position an average of every thirty minutes; requiring the claimant to be able to use a cane for ambulation; additional manipulative limitations; and more restrictive postural limitations." *Id.* The VE testified that even with this more restricted RFC, Plaintiff could still perform jobs that existed in significant numbers in the national economy. *Id.* As such, the ALJ found "in the alternative, that if the claimant had a more restrictive residual functional capacity that included these additional limitations, the other findings set forth herein, including [the] ultimate finding of nondisability, would remain." *Id.* I therefore do not find that the ALJ committed an error warranting remand.

## V.     CONCLUSION

For the reasons set forth herein, Defendant's motion for summary judgment, ECF 12, is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge